ORAL ARGUMENT NOT YET SCHEDULED

**Case No. 24-1348**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

RYAN J. PAUL,

*Petitioner*

*v.*

FEDERAL AVIATION ADMINISTRATION,

*Respondent*

Petition for Review of a Final Decision of the
Federal Aviation Administration

---

**PETITIONER'S OPENING BRIEF**

---

Stephanie G. Spanja, Bar No. 62342
*Stephanie.Spanja@alpa.org*
M. Antonia Bird, Bar No. 65666
*Antonia.Bird@alpa.org*
AIR LINE PILOTS ASSOCIATION,
   INTERNATIONAL
7950 Jones Branch Drive, Suite 400S
McLean, Virginia 22102
(703) 481-2475
(703) 481-2478 (fax)

March 12, 2025                    *Attorneys for Petitioner, Ryan J. Paul*

**CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES**

Pursuant to Circuit Rule 28(a)(1), Petitioner Ryan J. Paul certifies as follows:

**A.    Parties and Amici**

The Petitioner in this case is Ryan J. Paul.

The Respondent in this case is the Federal Aviation Administration ("FAA").

There are no intervenors or amici curiae.

**B.    Rulings under Review**

The ruling under review is the FAA's August 27, 2024 Order.

**C.    Related Cases**

There are no related cases.

Dated: March 12, 2025              */s/ Stephanie G. Spanja*
                                   Stephanie G. Spanja
                                   M. Antonia Bird
                                   AIR LINE PILOTS ASSOCIATION,
                                     INTERNATIONAL

                                   *Attorneys for Petitioner, Ryan J. Paul*

# TABLE OF CONTENTS

Page

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED
 CASES .................................................................................................. ii

TABLE OF AUTHORITIES ........................................................................v

GLOSSARY ...............................................................................................x

JURISDICTIONAL STATEMENT ..........................................................1

STATUTORY AND REGULATORY AUTHORITIES ............................3

ISSUES PRESENTED ...............................................................................3

STATEMENT OF THE CASE ...................................................................4

    A.     DOT and FAA Drug Testing ...............................................4

    B.     Factual Background ..............................................................8

    C.     Procedural History .............................................................11

SUMMARY OF THE ARGUMENT ........................................................15

STATEMENT OF STANDING ...............................................................18

STANDARD OF REVIEW ......................................................................19

ARGUMENT ...........................................................................................20

I.     THE FAA's CONCLUSION THAT MR. PAUL REFUSED A
     DRUG TEST WAS ARBITRARY, CAPRICIOUS, AND AN
     ABUSE OF DISCRETION IN VIOLATION OF THE
     ADMINISTRATIVE PROCEDURE ACT ....................................20

    A.     The FAA's Failure to Explain the Basis of Its Finding Is
          Arbitrary, Capricious, and an Abuse of Discretion. ...........20

    B.     The FAA Failed to Consider Relevant and Determinative
          Exonerating Record Evidence. ...........................................22

C.      The FAA's Post Hoc Attempt to Justify Its Rule Violation
         Finding Is Based on an Erroneous Application of an
         Inapposite Regulation..........................................................................28

II.   THE FAA'S RULE VIOLATION FINDING VIOLATES MR.
      PAUL'S PROCEDURAL DUE PROCESS RIGHTS UNDER
      THE FIFTH AMENDMENT..........................................................................33

CONCLUSION ....................................................................................................38

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT,
      TYPEFACE REQUIREMENTS, AND TYPE-STYLE
      REQUIREMENTS

ADDENDUM OF PERTINENT STATUTES AND REGULATIONS

# TABLE OF AUTHORITIES

Page(s):

**Cases:**

*Am. Petroleum Inst. v. EPA*, 216 F.3d 50 (D.C. Cir. 2000) ......................................18

\* *Amerijet Int'l, Inc. v. Pistole*, 753 F.3d 1343 (D.C. Cir. 2014) ...............................21

*Atherton v. D.C. Office of the Mayor*, 567 F.3d 672 (D.C. Cir. 2009)....................34

*Bennett v. Spear*, 520 U.S. 154 (1997)........................................................................2

*Bonacci v. TSA*, 909 F.3d 1155 (D.C. Cir. 2018) ......................................................18

*Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156 (1962) ......................21

*Butte County, Cal. v. Hogen*, 613 F.3d 190 (D.C. Cir. 2010)...................................22

*Campbell v. D.C.*, 894 F.3d 281 (2018) .....................................................................34

*CSI Aviation Servs., Inc. v. U.S. Dep't of Transp.*, 637 F.3d 408 (D.C. Cir. 2011) .................................................................................................1, 3

*Dep't of Commerce v. N.Y.*, 588 U.S. 752 (2019)......................................................20

\* *Dickson v. Sec'y of Defense*, 68 F.3d 1396 (D.C. Cir. 1995) ............................20, 22

*English v. D.C.*, 717 F.3d 968 (D.C. Cir. 2018) .......................................................36

*Flytenow, Inc. v. FAA*, 808 F.3d 882 (D.C. Cir. 2015) ........................................1, 29

*Greene v. McElroy*, 360 U.S. 474, 492 (1959)..........................................................34

*Jifry v. FAA*, 370 F.3d 1174 (D.C. Cir. 2004)..........................................................20

*Kisor v. Wilkie*, 588 U.S. 558 (2019) .......................................................................29

*Loper Bright Enters. v. Raimondo,* 603 U.S. 369 (2024) ........................................29

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992)......................................................18

\* Authorities chiefly relied upon are marked with an asterisk (\*).

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) ........................................................................22

*Nat'l Ass'n of Home Builders. v. EPA*, 786 F.3d 34 (D.C. Cir. 2015) .....................19

*O'Donnell v. Barry*, 148 F.3d 1126 (D.C. Cir. 1998) ................................34

*Puget Sound Traffic Ass'n v. Civil Aeronautics Bd.*, 536 F.2d 437 (D.C. Cir. 1976) .............................................................................2

*Sierra Club v. EPA*, 292 F.3d 895 (D.C. Cir. 2002) ................................18

*State Nat'l Bank of Big Spring v. Lew*, 795 F.3d 48 (D.C. Cir. 2015) ....................18

*Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504 (1994) ........................................29

*Vietnam Veterans of Am. v. Shinseki*, 599 F.3d 654 (D.C. Cir. 2010) ........................1

**Constitution, Statutes, Regulations:**

U.S. Const. art. III ...............................................................................18

U,S, Const. amend. V ..............................................................................33

Pub. L. 102-143, 105 Stat. 917 (1991) .....................................................4

5 U.S.C. § 704 ...................................................................................1

5 U.S.C. § 706(2) ............................................................................19, 20

49 U.S.C. § 106(a) ...............................................................................5

49 U.S.C. § 44703 ............................................................................8, 35

49 U.S.C. § 44709 ............................................................................7, 36

49 U.S.C. § 45102 .............................................................................4, 9

49 U.S.C. § 46110 ......................................................................3, 19, 20, 39

14 C.F.R. pt. 61 ...................................................................................7

\* Authorities chiefly relied upon are marked with an asterisk (\*).

14 C.F.R. § 61.23 ................................................................7, 34

14 C.F.R. pt. 67 ...........................................................................7

14 C.F.R. § 67.101 ....................................................................19

14 C.F.R. § 67.107 ...............................................................7, 19, 34, 35

14 C.F.R. § 67.207 .......................................................................7

14 C.F.R. § 67.307 .......................................................................7

14 C.F.R. § 111.105 ................................................................8, 35

14 C.F.R. § 111.220 ................................................................8, 35

14 C.F.R. § 120.3 ......................................................................26

14 C.F.R. § 120.7 .............................................................5, 27, 32

14 C.F.R. § 120.11 .......................................................................7

14 C.F.R. § 120.103 .....................................................................5

14 C.F.R. § 120.105 ..................................................................5, 6

14 C.F.R. § 120.111 ..........................................................6, 31, 32

14 C.F.R. § 120.123 ................................................................5, 25

49 C.F.R. pt. 40 ...........................................................................6

49 C.F.R. § 40.5 .........................................................................27

49 C.F.R. § 40.25 .......................................................................35

* 49 C.F.R. § 40.191 ............................................................5, 8, 32, 38

49 C.F.R. § 40.285 .............................................................6, 7, 14, 16

* 49 C.F.R. § 40.355 ................................................16-17, 28-30, 32, 35, 37

* Authorities chiefly relied upon are marked with an asterisk (*).

49 C.F.R. pt. 821 ...........................................................................7, 36

**Miscellaneous Authorities:**

FAA, *About the Drug Abatement Division*,
    https://www.faa.gov/about/office_org/headquarters_offices/avs/
    offices/aam/drug_ alcohol/about (Sept. 26, 2024) .........................................6

FAA, AC 120-126: Guidelines to Establish, Implement, and Maintain
    a DOT/FAA Drug and Alcohol Testing Program (July 10, 2024)...........24, 26

FAA, Aviation Safety, Office of Aerospace Medicine, Drug Abatement
    Division, *Guidance Alert: FAA's Random Drug and Alcohol
    Testing Program* (v. 2023-01)...........................................................24

\* FAA, *Drug and Alcohol Compliance and Enforcement Surveillance
    Handbook*, Order 9120.1E (Apr. 1, 2023) ...........................................6, 30, 31

FAA, *FAA Compliance and Enforcement Program*, Order 2150.3C 31,
    32Chg. 10 (Nov. 14, 2022) .....................................................................31

FAA, *2025 Guide for Aviation Medical Examiners*,
    https://www.faa.gov/ame_guide/media/ame_guide.pdf (Jan. 1,
    2025) ............................................................................................35

FAA, *Legal Interpretation*, 2013 WL 1871744 (Apr. 19, 2013) ............................25

Final Rule, *Procedures for Transportation Workplace Drug and
    Alcohol Testing Programs: Addition of Oral Fluid Specimen
    Testing for Drugs*, 88 Fed. Reg. 27596 (May 2, 2023) ..........................25, 28

Office of Chief Counsel, FAA, Clarification of 14 C.F.R. § 120.109(d)
    as it relates to contractors who have their own drug testing
    programs (Jan. 20, 2016), *available at*
    https://www.faa.gov/media/20826.................................................32

\* Authorities chiefly relied upon are marked with an asterisk (\*).

Office of Drug and Alcohol Policy and Compliance, *What Employers Need to Know about DOT Drug and Alcohol Testing* (June 1, 2015), *available at* https://www.transportation.gov/sites/dot.gov/files/docs/ODAPC _Employer_Guidelines_% 20June_1_2015_A.pdf .......................................27

*Rojas*, Order EA-5476, ,2009 WL 5213712 (NTSB 2009) ....................................36

\* Authorities chiefly relied upon are marked with an asterisk (\*).

# GLOSSARY

| | |
|---|---|
| Addendum | Statutory Addendum |
| APA | Administrative Procedure Act, 5 U.S.C. §§ 704, 706 |
| App. | Joint Appendix |
| DOT | Department of Transportation |
| Drug Abatement | FAA Drug Abatement Division of the Office of Aerospace Medicine |
| FAA | Federal Aviation Administration |
| LOI | Letter of Investigation: Letter to Ryan Paul from Reginald Barnes (FAA) (April 5, 2024) |
| NTSB | National Transportation Safety Board |
| ODAPC | DOT Office of Drug and Alcohol Policy and Compliance |
| Omnibus Act | Omnibus Transportation Employee Testing Act, Pub. L. 102-143, 105 Stat. 917, 952 (1991) |
| Part 40 | 49 C.F.R. Part 40 |
| Part 120 | 14 C.F.R. Part 120 |
| PRD | Pilot Records Database |
| Response | Letter to Reginald Barnes from Michael Dworkin and attachments (Apr. 19, 2024) |
| Rule Violation Finding | FAA Decision Letter to Ryan Paul from Drug Abatement (Aug. 27, 2024) |
| June Email | Email to FAA from Ryan Paul and attachments (June 3, 2024) |

## JURISDICTIONAL STATEMENT

Mr. Paul seeks review of a Federal Aviation Administration ("FAA") final decision letter issued by the Drug Abatement Division ("Drug Abatement") on August 27, 2024, determining that he violated the DOT/FAA drug testing regulations by refusing to report for a regulatory-required drug test (hereinafter referred to as "Rule Violation Finding."). A-66.

Section 46110(a) of the Federal Aviation Act vests this Court with subject matter jurisdiction over challenges to FAA orders "issued by … the Administrator of the Federal Aviation Administration with respect to aviation duties and powers designated to be carried out by the Administrator[.]" A person "disclosing a substantial interest" in such an order "may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit … not later than 60 days after the order is issued." *Id.*

Section 704 of the Administrative Procedure Act ( "APA") authorizes judicial review of "'final agency action for which there is no other adequate remedy in a court.'" *Flytenow, Inc. v. FAA*, 808 F.3d 882, 889 (D.C. Cir. 2015) (quoting 5 U.S.C. § 704 and *Vietnam Veterans of Am. v. Shinseki*, 599 F.3d 654, 661 (D.C. Cir. 2010)). "To avoid premature intervention in the administrative process," this Court's "review of agency action 'has been judicially restricted to review of final agency orders.'" *CSI Aviation Servs., Inc. v. U.S. Dep't of Transp.*, 637 F.3d 408, 411 (D.C.

Cir. 2011) (quoting *Puget Sound Traffic Ass'n v. Civil Aeronautics Bd.*, 536 F.2d 437, 438-39 (D.C. Cir. 1976)). As this Court has observed,

> The Supreme Court set the standard for finality in *Bennett v. Spear*, 520 U.S. 154, 178[](1997). An agency action is final when it marks "the 'consummation' of the agency's decisionmaking process" and is not merely of a "tentative or interlocutory nature." *Id.* at 178[] (citations omitted). The action must be one in which "rights or obligations have been determined" or "from which legal consequences will flow." *Id.*

*Id.*

Here, the Rule Violation Finding is neither "tentative" nor "interlocutory," but instead states that the FAA "concluded [its] investigation into [Mr. Paul's] refusal to submit to a Department of Transportation (DOT)/Federal Aviation Administration (FAA) random drug test," characterizes his "refusal to submit to testing," directs him to comply with regulatory requirements applicable to "an individual who refuses to submit to any DOT test," and states its decision not to take "any legal enforcement action" against him in connection therewith. A-66. Accordingly, the Rule Violation Finding marked the "consummation" of the FAA's decision-making process with respect to Mr. Paul.

In its Rule Violation Finding, the FAA informed Mr. Paul that it "referred this matter to [its] Office of Aerospace Medicine," and advised him of certain legal consequences of a DOT/FAA random drug test refusal, as follows:

> In accordance with 49 CFR §40.285, an individual who refuses to submit to any DOT test cannot perform any DOT safety-sensitive duties for any employer until the individual has completed the Substance

2

Abuse Professional (SAP) evaluation, referral, and education/treatment process, as required by 14 CFR Part 120 and 49 CFR Part 40, Subpart O.

A-66.

Accordingly, this Court has statutory jurisdiction to consider Mr. Paul's Petition for Review, which was timely filed on October 25, 2024, within sixty (60) days of the issuance of the Rule Violation Finding. 49 U.S.C. § 46110(a). Further, because the Rule Violation Finding reflects the "consummation" of the FAA's decision-making process with respect to Mr. Paul and outlines certain legal consequences of the determination that he refused a random drug test, it is a "final agency order" under the Supreme Court's criteria and thus is subject for review by this Court. *See CSI Aviation Servs.*, 637 F.3d at 411.

## STATUTORY AND REGULATORY AUTHORITIES

All relevant statutory, regulatory, and constitutional authorities appear in the Addendum to this brief.

## ISSUES PRESENTED

1.  Whether the Federal Aviation Administration's August 27, 2024 order and determination that First Officer Paul's actions on April 2, 2024, constitute a "refusal to submit to a Department of Transportation (DOT)/Federal Aviation Administration (FAA) random drug test" is arbitrary, capricious, an abuse of discretion, or contrary to law.

2. Whether the Federal Aviation Administration's August 27, 2024 order and determination that First Officer Paul's actions on April 2, 2024, constitute a "refusal to submit to a Department of Transportation (DOT)/Federal Aviation Administration (FAA) random drug test" denied Petitioner Paul's procedural due process rights under the Fifth Amendment.

## STATEMENT OF THE CASE

### A.    DOT and FAA Drug Testing

In 1991, in "the interest of aviation safety," Congress enacted the Omnibus Transportation Employee Testing Act ("the Omnibus Act"), and directed the Department of Transportation ("DOT") and the FAA to prescribe regulations requiring air carriers to conduct drug and alcohol testing of their employees who are responsible for safety-sensitive functions. Pub. L. 102-143, 105 Stat. 917, 952 (1991); 49 U.S.C. § 45102(a)(1). The Omnibus Act requires that these drug and alcohol testing programs include "preemployment, reasonable suspicion, random and post-accident testing" of employees responsible for safety-sensitive functions, including "airmen" or pilots. 49 U.S.C. § 45102(a)(1).

DOT regulations governing drug and alcohol testing programs are set forth in 49 C.F.R. Part 40 ("Part 40") and administered by DOT-governed carriers. Part 40 prescribes the procedures for collection, testing, reporting, and other obligations applicable to carriers, employees, service agents, and others. *Id.*

4

The FAA, as an administration within the DOT, has issued regulations governing the drug testing of individuals within the aviation industry who perform safety-sensitive functions, such as commercial airmen, which are set forth in 14 C.F.R. Part 120 ("Part 120"). 49 U.S.C. § 106(a); 14 C.F.R. § 120.105(a). As explained therein, the purpose of Part 120 is

> to establish a program designed to help prevent accidents and injuries resulting from the use of prohibited drugs or the misuse of alcohol by employees who perform safety-sensitive functions in aviation.

14 C.F.R. § 120.103(a).

All required drug testing under the DOT/FAA regulations must take place within the United States—no testing on foreign soil is permitted. 14 C.F.R. § 120.123.

The FAA requires aviation employers to conduct drug testing in compliance with Part 40. 14 C.F.R. § 120.103(b)(1). Accordingly, Part 120 defines a "refusal to submit to a drug test" as a circumstance in which a "covered employee engages in conduct including but not limited to that described in 49 CFR 40.191." 14 C.F.R. § 120.7(m). Part 40 lists the types of conduct which may constitute a "refusal," including the failure to "appear for a test (except a pre-employment test) within a reasonable time, as determined by the employer, consistent with applicable DOT agency regulations, after being directed to do so by the employer." 49 C.F.R. § 40.191(a)(1).

5

An employer must notify the FAA of a test refusal by an employee who has an airman certificate within two (2) working days. 14 C.F.R. § 120.111(d). Upon receipt of an employer's notification of a test refusal, the FAA's Drug Abatement Division ("Drug Abatement") of the Office of Aerospace Medicine must initiate an investigation into the alleged noncompliance with Part 120 and Part 40 requirements, including an employer's reported drug test refusal.[1] FAA, Order 9120.1E, Ch. 3 ¶ 3(d) (Apr. 1, 2023) (all refusal reports are investigated); *Id.* Ch. 3 ¶ 2 (noting that the majority of Drug Abatement "investigations pertain to alleged deviations of the drug and alcohol testing regulations by … individuals who perform safety-sensitive functions. *The purpose of these investigations is to determine whether a finding of noncompliance exists* and warrants the need for compliance action … to prevent reoccurrence of noncompliance with the drug and alcohol testing regulations." (emphasis added)).

An airman who has "violated DOT drug and alcohol regulations, … cannot again perform any DOT safety-sensitive duties for any employer unless and until [they] complete" a return-to-duty process. 49 C.F.R. § 40.285(a); *see* 49 C.F.R. pt. 40, subpt. O (outlining return-to-duty process and requirements); 14 C.F.R. § 120.105 (safety-sensitive functions include flight crewmember duties). A "refusal

---

[1] https://www.faa.gov/about/office_org/headquarters_offices/avs/offices/aam/drug_alcohol/about.

to test … or any other violation of the prohibition on the use of alcohol or drugs under a DOT agency regulation constitutes a DOT drug and alcohol regulation violation." 49 C.F.R. § 40.285(b).

A commercial airman is required to hold both a commercial airman certificate, 14 C.F.R. pt. 61, and a medical certificate, 14 C.F.R. pt. 67; 14 C.F.R. § 61.23. Even after completing the return-to-duty process, an airman continues to suffer additional consequences under the FAA medical certification standards. 14 C.F.R. pt. 67. A refusal to submit to a DOT/FAA-required drug test constitutes "substance abuse" under the regulations, which is a disqualifying medical condition rendering the pilot ineligible to hold an airman medical certificate for two (2) years, thus prohibiting the performance of work as a pilot. 14 C.F.R. §§ 67.107(b)(2), .207(b)(2), .307(b)(2).

Violating the testing regulations, including a determined refusal to take a DOT/FAA-required drug test can also result in the FAA taking legal enforcement action by suspending or revoking the pilot's airman certificate. 14 C.F.R. § 120.11(b)(2); *see also* 49 U.S.C. § 44709(b)(1)(A) (authorizing the Administrator to take such action if "[t]he Administrator decides after conducting … an investigation that safety in air commerce or air transportation and the public interest require that action"). Such agency action affords the pilot due process in an appeal procedure before the National Transportation Safety Board ("NTSB"). *See* 49 C.F.R. pt. 821. In the case-at-hand, the FAA determined that Mr. Paul committed a rule

violation by "refusing" a DOT/FAA drug test and determined not to take legal enforcement action. Accordingly, Mr. Paul has no access to due process review, such as those provided under the NTSB procedures, to challenge the asserted drug test refusal.

The consequences of a determined DOT/FAA drug test refusal include lifetime branding as a rule violator for future prospective airline employers. DOT/FAA drug test refusals must be reported on the Pilot Records Database ("PRD"), a statutorily-required, electronic database that maintains such records for each pilot's lifetime, and which commercial airlines must review before hiring any pilot. 49 U.S.C. §§ 44703(h)(1)(A), (h)(1)(B)(ii)(III), (i)(1), (i)(2)(A)(i), (i)(2)(A)(iii); 14 C.F.R. § 111.220(a)(1)(ii); 14 C.F.R. § 111.105.

Additionally, "consequences specified under DOT agency regulations for a refusal cannot be overturned or set aside by an arbitration, grievance, State court or other non-Federal forum that adjudicates the personnel decisions the employer has taken against the employee." 49 C.F.R. § 40.191(c).

### B.    Factual Background

From September 22, 2022, through April 9, 2024, Mr. Paul was employed by AmeriJet International ("AmeriJet") as a pilot at the rank of First Officer. A-36, A-49-50. As an airman whose job duties entailed the performance of "safety-sensitive"

functions, Mr. Paul was subject to random drug testing pursuant to DOT and FAA regulations. 49 U.S.C. § 45102(a).

On April 2, 2024, Mr. Paul was in Vietnam and sick with a sinus infection. A-61. Mr. Paul reported his illness to AmeriJet in three separate written communications prior to having any knowledge of a DOT/FAA random drug test. Upon seeing notice of a missed call from AmeriJet, Mr. Paul emailed Crew Scheduling at 10:55 a.m. (EDT) asking if they were trying to reach him. A-46.[2] Crew Scheduling replied by email that they would call him back. At 11:03 a.m. (EDT),[3] Mr. Paul emailed Crew Scheduling saying his phone signal was "really weak" and that the calls were not ringing on his end but were just leaving a missed call notification. He asked if they could possibly email him. He reported, "I'm also under the weather at the moment with a bad sinus infection." A-45-46. In a subsequent email at 11:09 a.m. (EDT), Mr. Paul notified Crew Scheduling that, if it was attempting to contact him with an assignment, "then I need to call in sick brother. I have a bad sinus infection." A-45. Thus, before his duty period was to begin, Mr. Paul put AmeriJet on clear notice that he was sick, unable to fly, and would not be performing any flight duties that day.

---

[2] Mr. Paul's duty period was scheduled to begin at 12:00 p.m. (EDT). A-55, A-61, A-64, A-68.

[3] Because Mr. Paul received the email in Hanoi, Vietnam, the timestamp for the 11:03 a.m. (EDT) email states 22:03, which is GMT + 7. *See* A-45, A-68.

The manager of Crew Scheduling replied to Mr. Paul at 11:11 a.m. (EDT),[4] acknowledging his need to call in sick, but saying he should "contact crew scheduling directly [by phone] as sick calls are not taken over emails." *Id.* At 11:49 a.m. (EDT), Mr. Paul wrote back asking whether his schedule was viewed incorrectly as it did not allow sufficient time for him to perform a flying assignment between his rest period and off day but advised "if there is no mistake … and you do in fact need me for something … then yes, I need to call in sick please." A-44. Mr. Paul also reported that he had called in sick via email in December without any problem and asked if the manager was sure about the phone call. *Id.*

After waiting a couple of minutes for a response to his 11:49 a.m. email, Mr. Paul called Crew Scheduling as directed around 11:51 a.m. and was immediately transferred to then-Chief Pilot Edward Hesler, who told Mr. Paul to report for a DOT/FAA random drug test within the hour in Washington state. A-13, A-55, A-61, A-68-69, A-71. Mr. Paul did not know why his sick status was not being recognized. *Id*. He acknowledged the assignment, and the phone call ended. A-61. Mr. Paul later called Chief Pilot Hesler and informed him that he was in Vietnam and that it was physically impossible for him to report for the DOT/FAA random drug test as directed. *Id.*

---

[4] The 11:11 a.m. (EDT) email received by Mr. Paul in Hanoi, Vietnam, has the timestamp of 22:11, which is GMT + 7. A-44, A-68.

Two days later, on April 4, 2024, AmeriJet notified the FAA's Drug Abatement Division that Mr. Paul refused to submit to a DOT/FAA random drug test by "[f]ailure to arrive at the collection site." A-20. On April 9, 2024, AmeriJet terminated Mr. Paul's employment based on its consideration that Mr. Paul's inability to appear for the random test constituted a "refusal" under the regulations and of Mr. Paul's ineligibility to perform safety-sensitive duties until he completed DOT/FAA return-to-duty requirements. A-49-50. ("Therefore, Amerijet International is considering this a refusal to submit to testing when notified." And "Until you have completed all the above Department of Transportation requirements, you are not eligible to perform safety-sensitive duties for **any employer**. For this reason, effective immediately, your employment with Amerijet International is <u>terminated</u>." *Id.* (emphasis in original)).

## C.    Procedural History

On April 4, 2024, AmeriJet notified Drug Abatement that Mr. Paul had "refused" to submit to a DOT/FAA random drug test. A-6, A-10, A-20. The FAA sent Mr. Paul a Letter of Investigation, dated April 5, 2024 ("LOI"), informing him that it was "investigating information indicating [he] refused to submit to a Department of Transportation (DOT)/Federal Aviation Administration (FAA) random drug test directed by Amerijet International, Inc. on April 2, 2024." A-22-24. It further explained that it was conducting an investigation "to determine whether [he] refused

11

to submit to a DOT/FAA random drug test as reported to us … and if so, what, if any, enforcement action should be taken." *Id.*

Mr. Paul, through his then-counsel Michael L. Dworkin, timely responded to the LOI on April 19, 2024 ("Response"). A-54-55. The Response explained that he had traveled to Vietnam for a personal vacation on March 20, 2024 and was scheduled to return to Seattle on March 30, 2024, but developed a severe sinus infection, with a high fever and intense ear pressure, and was advised by his medical providers (including an FAA Aviation Medical Examiner) not to fly because of the risk of rupturing an ear drum. *Id.* It further explained his reasonable belief, based on rest and scheduling constraints, that on April 1 (April 2 in Vietnam), his schedule would not allow any flight assignment. A-55. The Response provided detailed information to the FAA about his email notifications to AmeriJet regarding his sick status on April 2, all of which was sent prior to the start of his duty period and before having any knowledge of a DOT/FAA random drug test. *Id.* It also clarified that AmeriJet gave Mr. Paul the DOT/FAA random drug test directive *after* it had knowledge that he was sick and unable to fly, and its insistence on him reporting for testing in Seattle despite his being in Vietnam and it being physically impossible for him to do so. *Id.* The Response attached pictures of Mr. Paul's U.S. Passport showing his arrival in Vietnam on March 20, 2024, and departure on April 8, 2024. A-57-58. It concluded, stating: "AmeriJet's scheduling of the random test for April 2, 2024, in

view of the fact that Mr. Paul had already called in sick and unavailable was improper." A-56.

Mr. Paul subsequently sent an email to the FAA dated June 3, 2024 ("June Email"), in which he reiterated that he was unable to report for the random drug test because he was in Vietnam and had been ill with a sinus infection. A-60-62. Mr. Paul emphasized that he had notified AmeriJet by email that he was ill prior to receiving notification of the random drug test. *Id.* Further, Mr. Paul explained that although the collective bargaining agreement between AmeriJet and his union requires telephonic notification of illness, AmeriJet had previously accepted sick notification from him by email, which Mr. Paul attached for the FAA's reference. A-61, A-65.

On August 27, 2024, Mr. Paul received a letter ("Rule Violation Finding") from Drug Abatement informing him of the results of the FAA's investigation. A-66. In this letter, Drug Abatement stated:

> We have concluded our investigation into your refusal to submit to a Department of Transportation (DOT)/Federal Aviation Administration (FAA) random drug test directed by Amerijet International, Inc. on April 2, 2024.

> This correspondence is to inform you we are not taking any legal enforcement action against you in connection with your refusal to test but have referred this matter to the FAA's Office of Aerospace Medicine.

> In accordance with 49 CFR § 40.285, an individual who refuses to submit to any DOT test cannot perform any DOT safety-sensitive duties for any employer until the individual has completed the Substance Abuse Professional (SAP) evaluation, referral, and education/treatment

> process, as required by 14 CFR Part 120 and 49 CFR Part 40, Subpart O.

*Id.* The FAA did not explain the basis for its conclusion that Mr. Paul had refused to submit to a DOT/FAA random drug test. While finding that Mr. Paul violated the DOT/FAA drug testing regulations, the FAA declined to pursue enforcement action against his airman certificate, but advised him of certain regulatory consequences of its rule violation determination, including the prohibition against him performing "any DOT safety-sensitive duties" until he completed a substance abuse "evaluation, referral, and education/treatment process." *Id.*; 49 C.F.R. § 40.285(a).

Through the undersigned counsel, Mr. Paul sent a letter on October 23, 2024, to Drug Abatement, stating that "the conclusion that [he] 'refused' to appear for a DOT/FAA random drug test was in error" and strongly urged the FAA to reconsider its Rule Violation Finding. A-68. Mr. Paul emphasized that the "evidence clearly establishes that [he] had no intent or ability to report for duty that day and committed no rule violation under the DOT/FAA testing regulations." A-69. In addition, Mr. Paul noted that

> he posed no risks whatsoever to flight safety. To treat Mr. Paul as a rule violator under these circumstances is wholly inconsistent with the language and intent of the regulations. The FAA designation of him as having "refused" a DOT-required test has unjustified, significant, and lifetime consequences.

*Id.*

In an email dated October 24, 2024, Drug Abatement replied to Mr. Paul's letter and stated in relevant part as follows:

> [I]n accordance with 49 CFR 40.355(i), refusal determinations are made by the employer. The FAA did not make a refusal determination regarding Mr. Paul's drug test. Our letter to Mr. Paul simply informed him that the FAA is not pursuing legal enforcement action regarding this matter and noted the return-to-duty requirements in 49 CFR 40.285 for individuals who have refused to submit to DOT testing.

A-76.

On October 25, 2024, Mr. Paul timely filed his Petition for Review with this Court.

## SUMMARY OF THE ARGUMENT

On April 2, 2024, before his next scheduled duty period, Ryan Paul advised his then-employer, AmeriJet, that he was ill and unable to report for duty. Two days later, AmeriJet nonetheless reported to the FAA that Mr. Paul had refused a random drug test at the beginning of a scheduled duty period. The FAA thereupon initiated an investigation of Mr. Paul's alleged refusal, and in its own LOI, indicated that it would investigate "whether" Mr. Paul had in fact refused a random DOT/FAA drug test. In its Rule Violation Finding, issued on August 27, 2024, however, the FAA blankly states that it had "concluded its investigation into [his] refusal" of a random DOT/FAA drug test, and that while it would take no enforcement action against his airman certificate, it confirmed his ("your") "refusal to submit to testing" and

directed him to complete the return-to-duty procedures for rule violators pursuant to

49 C.F.R. § 40.285. A-66.

In rendering its Rule Violation Finding, the FAA wholly ignored the record evidence showing that Mr. Paul became ill while traveling in Vietnam and was unable to fly (even as a passenger) and that he provided written (time and date-stamped) notification of sickness and his inability to report for duty *prior* to the start of his duty period and *before* receiving any request to report for random drug testing in the United States. Since Mr. Paul was in Vietnam and under the testing regulations testing must be conducted in the United States, it was impossible for him to submit to a DOT/FAA random drug test. The record evidence the FAA failed to consider clearly established that no DOT/FAA random testing should have been requested under these circumstances, and if initiated, should have been excused, deferred, or administratively closed as a non-event (employer options permitted under FAA guidance).

The FAA further issued its Rule Violation Finding without providing any explanation as to why it concluded that Mr. Paul refused a random DOT/FAA drug test, and in so doing acted arbitrarily. The FAA then compounded its error by claiming that it had not actually made a determination that Mr. Paul had refused a random DOT/FAA drug test, but rather, that AmeriJet made the determination. In so claiming, the FAA sought cover in 49 C.F.R. § 40.355(i), which provides that an

employer has a non-delegable duty to make the determination that an employee refused a random DOT/FAA drug test. However, Section 40.355(i) is addressed to service agents, and clearly provides that an employer may not delegate to a service agent its duty to make a refusal determination.

This regulation neither states nor implies that an employer's refusal determination is immune from review or reversal by a regulatory authority. The FAA's clearly erroneous interpretation of Section 40.355(i) is arbitrary and capricious and constitutes a wholly unjustified relinquishment of its responsibility to exercise independent judgment.

The consequence of the FAA's misapplication of Section 40.355(i) is that the employer—and not the FAA—is the ultimate decisionmaker as to whether an employee violated FAA regulations by refusing a random DOT/FAA drug test. An employer's evaluation of an employee's actions may be based upon company-specific policies and procedures (such as preferring telephone notification versus a written report of an employee's sickness) or other internal personnel disputes. These concerns are separate and apart from risks of illegal drug use by employees performing safety-sensitive duties, which the DOT/FAA testing regulations are intended to address.

Moreover, an employee such as Mr. Paul, who is deemed by their employer to have refused a random DOT/FAA drug test is left without a meaningful

opportunity to be heard before the severe consequences of a test refusal are levied upon him. This is a gross violation of Mr. Paul's Fifth Amendment Due Process rights, and he has sustained significant and permanent damage to his career as a result.

## STATEMENT OF STANDING

Mr. Paul has Constitutional standing under Article III to challenge the FAA's Rule Violation Finding. For standing, a petitioner must "show a 'substantial probability' that it has been injured, that the defendant caused its injury, and that the court could redress that injury." *Sierra Club v. EPA*, 292 F.3d 895, 899 (D.C. Cir. 2002) (quoting *Am. Petroleum Inst. v. EPA*, 216 F.3d 50, 63 (D.C. Cir. 2000) (per curiam)). "The Supreme Court has stated that 'there is ordinarily little question' that a regulated individual or entity has standing to challenge an allegedly illegal statute or rule under which it is regulated." *State Nat'l Bank of Big Spring v. Lew*, 795 F.3d 48, 53 (D.C. Cir. 2015) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561-62 (1992)). Moreover, a "'petitioner's standing to seek review of administrative action is [usually] self-evident ... if the complainant is 'an object of the action (or forgone action) at issue[.]'"" *Bonacci v. TSA*, 909 F.3d 1155, 1159 (D.C. Cir. 2018) (alterations in original) (quoting *Sierra Club*, 292 F.3d at 899-900 (quoting *Lujan*, 504 U.S. at 561)).

18

Here, Mr. Paul's standing is self-evident. Mr. Paul has suffered and continues to suffer injuries such as being permanently deemed a federal rule violator in the FAA's PRD with the risk of loss of future employment opportunities by air carriers and other entities required to review the PRD before hiring pilots; economic damage from the loss of his first-class medical certificate for two years, 14 C.F.R. §§ 67.101, 67.107; the lost opportunity to receive due process; and harm to his professional reputation. These injuries are the direct result of the FAA's Rule Violation Finding when it erroneously found Mr. Paul to be a rule violator, failed to issue a reasoned evaluation of the evidence in its decision after investigating a reported drug refusal, and misinterpreted an inapposite regulation to support its arbitrary and capricious decision. *Nat'l Ass'n of Home Builders. v. EPA*, 786 F.3d 34, 43 (D.C. Cir. 2015) (noting that "regulatory constraints typically qualify as injury in fact" for standing purposes).

And, under the APA, this Court can redress Mr. Paul's injuries by holding the FAA's Rule Violation Finding unlawful and setting it aside. 5 U.S.C. § 706(2); *see also* 49 U.S.C. § 46110(c) (granting the court authority to "affirm, amend, modify, or set aside any part" of the FAA's order).

## STANDARD OF REVIEW

The FAA's Rule Violation Finding is subject to judicial review pursuant to the APA and must be held unlawful and set aside when, as here, it is "arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); 49 U.S.C. § 46110. Mr. Paul's claim that the FAA's Rule Violation Finding constituted a violation of his right to due process under the U.S. Constitution is subject to *de novo* review. *Jifry v. FAA*, 370 F.3d 1174, 1182 (D.C. Cir. 2004).

**ARGUMENT**

**I.   THE FAA's CONCLUSION THAT MR. PAUL REFUSED A DRUG TEST WAS ARBITRARY, CAPRICIOUS, AND AN ABUSE OF DISCRETION IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT**

**A.    The FAA's Failure to Explain the Basis of Its Finding Is Arbitrary, Capricious, and an Abuse of Discretion.**

The FAA's failure to provide any explanation or reasoning for its determination that Mr. Paul refused a drug test is legally deficient. "The requirement that agency action not be arbitrary and capricious includes a requirement that the agency adequately explain its result. The arbitrary and capricious standard of the APA mandates that an agency take whatever steps it needs to provide an explanation that will enable the court to evaluate the agency's rationale at the time of decision." *Dickson v. Sec'y of Defense*, 68 F.3d 1396, 1404 (D.C. Cir. 1995) (internal quotations, alterations, and citations omitted); *Dep't of Commerce v. N.Y.*, 588 U.S. 752, 780 (2019) ("[I]n order to permit meaningful judicial review, an agency must

'disclose the basis' of its action." (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 167-69 (1962)).

Instead of providing a basis for its regulatory determination, the FAA summarily stated that it: (1) "concluded [its] investigation into your refusal to submit to a Department of Transportation (DOT)/Federal Aviation Administration (FAA) random drug test directed by Amerijet International, Inc. on April 2, 2024[;]" (2) confirmed Mr. Paul's ("your") "refusal to submit to testing[;]" (3) stated that while it was "not taking any legal enforcement action against [him] in connection with [his] refusal to submit to testing[,]" advised Mr. Paul of the regulatory requirements for DOT/FAA testing rule violators; and (4) "referred this matter to the FAA's Office of Aerospace Medicine." A-66.

Nowhere does the FAA explain why it reached this conclusion after its investigation "to determine whether [Mr. Paul] refused a DOT/FAA random drug test." A-22, A-66. This peremptory agency conclusion lacks any reasonable explanation and is legally infirm. *See Amerijet Int'l, Inc. v. Pistole*, 753 F.3d 1343, 1350-51 (D.C. Cir. 2014) (agency's decision that said nothing about why it made its determination was arbitrary).

Moreover, the FAA's Rule Violation Finding fails to discuss or even mention the specific facts of Mr. Paul's case. This failure to consider any factors from the investigation underscores the FAA's failure to engage in reasoned decision making

and to provide a genuine justification for its Rule Violation Finding. *Dickson v. Sec'y of Defense,* 68 F.3d at 1405 ("[A]n agency's explanation must minimally contain a 'rational connection between the facts found and the choice made.'" (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). Accordingly, the FAA's Rule Violation Finding is clearly arbitrary and capricious and should not stand.

### B. The FAA Failed to Consider Relevant and Determinative Exonerating Record Evidence.

The evidence in the record before the FAA clearly demonstrates that Mr. Paul did not violate the DOT/FAA drug testing regulations by refusing to submit to a required DOT/FAA drug test on April 2, 2024. In its Rule Violation Finding, the FAA admittedly conducted and concluded an investigation but failed to discuss or evaluate *any* of this evidence, and instead summarily found that Mr. Paul refused to submit to a DOT/FAA drug test and deemed him a rule violator. This alone warrants striking down the FAA's Rule Violation Finding. An "agency's refusal to consider evidence bearing on the issue before it constitutes arbitrary agency action within the meaning of § 706." *Butte County, Cal. v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010).

Here, the evidence on its face clearly establishes that Mr. Paul did not refuse a required DOT/FAA drug test within the meaning of the DOT/FAA regulations. Mr. Paul was sick in Vietnam on April 2, 2024, when AmeriJet sought to reach him by phone. A-54-55, A-46. When he received "missed call" notifications but the calls

did not go through to him, Mr. Paul emailed AmeriJet within minutes to see if it was trying to reach him. A-46. In multiple emails on April 2, Mr. Paul gave AmeriJet clear notice that he had a serious sinus infection and was unable to report to work.

- **11:03 a.m. (EDT)**[5]—"**I'm also under the weather at the moment with a bad sinus infection.**" A-45.
- **11:09 a.m. (EDT)**—"I'm off tomorrow so I'm assuming there's no assignment for me.
  But if there is somehow a flight (and perhaps I misinterpreted my schedule) … then **I need to call in sick** brother. **I have a bad sinus infection.**
  But surely there's no possible flight for me though when my day off is tomorrow, right?" *Id.*
- **11:49 a.m. (EDT)**—"I just wanted to make sure there's not an error with my schedule? I'm off tomorrow … so even if you traveled me out immediately, my rest period wouldn't even be over before my off day began. So that's why I was thinking maybe someone looked at my schedule correctly.
  But anyway, **if** there is no mistake … and **you do in fact need me for something … then yes, I need to call in sick please.**
  Are you sure about the phone call though? I had food poisoning in December and called in sick by email … with no problems." A-44.

**This unmistakable notice of Mr. Paul's sick status and inability to fly indisputably occurred prior to AmeriJet's request that he report for a random DOT/FAA drug test.**

Despite AmeriJet's clear knowledge that Mr. Paul was medically unable to report for work and had removed himself from duty, AmeriJet nonetheless directed him to report for a DOT/FAA random drug test. *See* A-12, A-55, A-61, A-68-69, A-

---

[5] Because Mr. Paul received the email in Hanoi, Vietnam, the timestamp for the 11:03 a.m. (EDT) email states 22:03, which is GMT + 7. *See* A-45, A-68.

71 (11:51 a.m. (EDT) telephone notification); A-47 (11:55 a.m. (EDT) email notification). Such action was not appropriate for DOT/FAA testing and should not have been given. It is totally inconsistent with the intent of the regulatory testing program and guidance pertaining to such testing.

A directive to report for a DOT/FAA drug test should not have been given to an employee known to be sick and unable to report for duty. There is *no* requirement for ill employees to report for drug testing, and any such requirement would be wholly unreasonable and legally unsupportable. Nor would it be consistent with the intent of the regulatory drug and alcohol testing program.

Rather, in its advice about "[a]cceptable excuses for not testing a selected employee[,]" the FAA recognizes that employees randomly selected for testing may legitimately be unavailable—such as individuals on "sick leave" or "on vacation." *See* FAA, Aviation Safety, Office of Aerospace Medicine, Drug Abatement Division, *Guidance Alert: FAA's Random Drug and Alcohol Testing Program* at 9 [Question 23] (v. 2023-01); *accord* FAA, AC 120-126, App'x B, § B.5.5 (July 10, 2024). Employers are told: "the regulation allows you the option of excusing the employee or holding the random selection until the employee returns within the testing cycle or calendar year." *Guidance Alert* at 9, *supra*.[6]

---

[6] The DOT/FAA advises that "employers should take care to notify an employee of his or her selection for random drug testing at a time when it can ensure that the

Clearly, even if Mr. Paul's name was randomly selected for testing, his illness should have precluded him from being directed to report for such testing. The FAA outlines two options for employers in that situation—defer the testing, or "excuse" it, but AmeriJet failed to do either. *See also* 88 Fed. Reg. 2762-23 (May 2, 2023) (discussing examples of potential non-refusals, including "a documented medical emergency" and stating that if "the employer determines that a refusal did not occur, the employer would treat the test as an administratively closed non-event. The employer would not 'cancel' the test and would not enter it on the MIS report required by DOT.").

Independent of Mr. Paul's sick status, AmeriJet's notice on April 2 that he was in Vietnam, further established its inability to perform DOT/FAA testing under the regulations. *See* 14 C.F.R. § 120.123(a) ("[N]o part of the [drug] testing process … shall be conducted outside of the territory of the United States."). Clearly, it was impossible for Mr. Paul to "promptly" report for testing in the United States.

The FAA failed to acknowledge that AmeriJet illegitimately ignored Mr. Paul's sick status and his location half-way across the world, reported him to have "refused" a DOT/FAA test request to report in Washington state in an hour, and then branded him a rule violator for life in the PRD. Such failure allows employers

---

employee proceeds directly to the testing facility immediately (*i.e.*, when the employee is at work)." FAA, *Legal Interpretation*, 2013 WL 1871744 at *1 (Apr. 19, 2013).

to weaponize the testing regulations to adversely affect the employee and is not a legitimate DOT/FAA drug test under the regulations.

If AmeriJet had any issues with Mr. Paul's compliance with *internal* company procedures (*e.g.*, sending his sick report in writing versus via telephone or his unavailability for duty in Seattle),[7] such matters should be addressed in accordance with company policy and the applicable collective bargaining agreement. But drug testing under the DOT/FAA regulations must comply with federal regulatory language and intent.

Moreover, the FAA's interpretation and application of the DOT regulations against Mr. Paul are unreasonable because they do not serve the purpose of the drug testing program, which is to "help prevent accidents and injuries resulting from the use of prohibited drugs … by employees who perform safety-sensitive functions in aviation." 14 C.F.R. § 120.3; *see also* FAA, AC 120-126 at 12 (§8.3.2), *supra* p. 24 ("The primary purpose of unannounced random testing is to deter drug use and alcohol misuse by aviation employees while performing safety-sensitive duties"). The DOT has explained that random tests are meant to "deter employees from using

---

[7] The record evidence shows that Mr. Paul reported in sick via email only months before without any problem and believed doing so was still acceptable. A-44, A-61, A-65 (AmeriJet acceptance of sick call via email on December 18, 2023). Unbeknownst to him, the method of sick notification at the airline had changed to telephonic. A-44, A-68, A-61. Any disputes about such internal company matters are not pertinent to the regulatory testing matters at issue.

drugs and misusing alcohol" because "employees know they will be tested" but "they are never quite sure when." Office of Drug and Alcohol Policy and Compliance ("ODAPC"), *What Employers Need to Know about DOT Drug and Alcohol Testing*, at 16 (June 1, 2015), *available at* https://www.transportation.gov/sites/dot.gov/files/docs/ODAPC_Employer_Guidel ines_% 20June_1_2015_A.pdf.[8]

There is no dispute that aviation safety is important. However, the rationale for random drug testing is not served here, where the FAA had record evidence from its investigation that Mr. Paul was not physically or geographically able to perform a safety-sensitive function when AmeriJet notified him of his random test. A-45, A-46, A-54-58, A-61-62. *See* 14 C.F.R. § 120.7 ("[A]n employee is considered to be performing a safety-sensitive function during any period in which he or she is actually performing, ready to perform, or immediately available to perform such function."). Moreover, although Mr. Paul was unable to perform a safety-sensitive function when notified, he remained subject to future random drug testing, thus ensuring that the random testing's deterrence goal remained in effect.

---

[8] The ODAPC and the DOT Office of General Counsel "provide written interpretations of the provisions of [Part 40]," and are "the only official and authoritative interpretations" of those provisions. 49 C.F.R. § 40.5.

Finally, there is no basis for deeming Mr. Paul to have "refused" a DOT/FAA drug test when it was impossible for him to undergo such testing due to his illness and location abroad. At its core, a refusal implies a choice or a willful action. 88 Fed. Reg. at 27622 ("Importantly, a refusal is a willful violation of the Department's drug and alcohol safety regulations and is completely separate and apart from employment decisions the employer makes."). The record evidence discussed above wholly fails to show any willful refusal by Mr. Paul to report to the testing site.

**C.    The FAA's Post Hoc Attempt to Justify Its Rule Violation Finding Is Based on an Erroneous Application of an Inapposite Regulation.**

In an October 24, 2024 email in response to a request for reconsideration of its Rule Violation Finding, the FAA states that it did not make a refusal determination regarding Mr. Paul's drug test but rather "in accordance with 49 CFR 40.355(i), refusal determinations are made by the employer." A-76. As we show below, the plain language of the regulation does not support the FAA's contentions. The cited regulation restrains a service agent's role in drug testing—it does not make an employer's refusal determination reported to the FAA autonomous and unreviewable by the FAA. Further, the FAA's assertion is wholly inconsistent with its investigatory role and internal written guidance. The FAA's plainly erroneous interpretation of this

regulation is entitled to no deference.[9] Its interpretation of Section 40.355(i) clearly shows that with respect to Mr. Paul's case, it did not engage in reasoned decision-making.

### The FAA's Interpretation Is Inconsistent with the Plain Language of the Regulation.

The FAA's assertion that it does not determine whether employer-reported drug testing "refusals" are rule violations under the DOT/FAA drug testing regulations is not supported by the plain meaning of Section 40.355(i). Section 40.355 is directed to service agents—not the employer—and sets limits on a service agent's "activities in the DOT drug and alcohol testing program." 49 C.F.R. § 40.355. That Section's title poses the question "What limitations apply to the activities of service agents?" and the text of that Section answers that question. Further, Section

---

[9] *See Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994); *see also Flytenow*, 808 F.3d at 889-90. When, as here, "there is only one reasonable construction of a regulation" there is no reason for deference and the plain meaning of the regulation must be enforced. *Kisor v. Wilkie*, 588 U.S. 558, 574-75, 581 (2019) (determining whether an agency's action or interpretation comports with its regulations, a court "must apply all traditional methods of interpretation" by carefully considering "the text, structure, history, and purpose of a regulation, in all the ways it would if it had no agency to fall back on," and "must enforce the plain meaning those methods uncover"). If, however there is genuine ambiguity, "the agency's reading must still be 'reasonable.'" *Id.* at 575-76 (quoting *Thomas Jefferson Univ.*, 512 U.S. at 515); *see also Loper Bright Enters. v. Raimondo,* 603 U.S. 369, 395-96 (2024) (explaining that "a court upholds the traditional conception of the judicial function that the APA adopts" and "ensure[s] that an agency has engaged in reasoned decisionmaking" within the boundaries of its authority when it exercises its authority to "independently interpret [a] statute and effectuate the will of Congress subject to constitutional limits" (internal citations omitted)).

40.355(i) is located within subpart Q and that subpart's title—"Roles and Responsibilities of Service Agents"—also clearly shows that service agents are the subject matter of the regulation. In continuing to answer the question of the limitations applied to service agents, Section 40.355(i) states in its entirety:

> Except as provided in paragraph (j) of this section, you must not make a determination that an employee has refused a drug or alcohol test. This is a non-delegable duty of the actual employer. You may, however, provide advice and information to employers regarding refusal-to-test issues.

Section 40.355(i) plainly and clearly speaks only to a service agent's role in relation to that of the employer and vests the employer with the duty to make the refusal determination. But Section 40.355(i) does not make an employer's determination unreviewable by the FAA. Far from it. Section 40.355(i) does not—and cannot—limit the FAA's authority to determine whether a reported "refusal" actually demonstrates noncompliance with the DOT/FAA testing regulations. As we show below, that is what the FAA routinely does.

### The FAA's Regulatory Interpretation Conflicts with Its Internal Orders and Guidance.

The FAA's interpretation of Section 40.355(i) that "refusal determinations are made by the employer" and seemingly are nonreviewable by the FAA, conflicts with its own internal orders and guidance, which require it to investigate all refusal reports. FAA, Order 9120.1E, Ch. 3 ¶ 3(d), *supra* p. 6. Indeed, after receiving a refusal report from an employer the FAA will investigate

30

> *alleged deviations* by … individuals who perform safety-sensitive functions. The purpose of these investigations is to determine whether a finding of noncompliance exists and warrants the need for compliance action, administrative action (i.e., WN or LOC), legal enforcement action (i.e., civil penalty or certificate action) to prevent reoccurrence of noncompliance with the drug and alcohol testing regulations.

*Id.*, Ch. 3, ¶ 2 (emphasis added); *see also* FAA Order 2150.3C Chg. 10, Ch. 4 ¶1, at 53 (4-1) (Nov. 14, 2022) ("This chapter provides guidance for investigations into *apparent violations* of statutes and regulations, as well as qualifications to hold certificates, ratings, approvals, authorizations, licenses, or permits." (emphasis added)).

The FAA regularly investigates and makes determinations about whether employer-reported drug and alcohol testing violations are legally supportable violations of the regulations. Such FAA investigatory findings determine whether the FAA seeks legal enforcement actions against the alleged rule violating pilot. The practical consequence of the FAA's now-asserted Section 40.355(i) interpretation would render any agency investigation into an employer's refusal report essentially pointless.

The regulations require employers to "notify the FAA within 2 working days of any covered employee … who has refused to submit to a drug test." 14 C.F.R. § 120.111(d). The FAA treats these refusal reports as "alleged deviations" and "apparent violations," not as a final and nonreviewable designation. FAA Order 9120.1E, Ch. 3, ¶ 2; FAA Order 2150.3C Chg. 10, Ch. 4, ¶1, at 53 (4-1), *supra* p. 31;

31

*see also* Office of Chief Counsel, FAA, Clarification of 14 C.F.R. § 120.109(d) as it relates to contractors who have their own drug testing programs (Jan. 20, 2016), *available at* https://www.faa.gov/media/20826 ("If an employee becomes belligerent or uncooperative and does not appear for the test after [the employer] has directed the employee to do so, the FAA could find that he or she has refused to take a drug test. 40 C.F.R. § 40.191(a)(1); 14 C.F.R. § 120.7(o).").

However, under its present reading of Section 40.355(i), the FAA would be compelled to automatically accept every employer's refusal report as the last word on whether an employee committed a regulatory violation. This would render any investigation perfunctory and contrary to the FAA's statement that employer refusal reports are "alleged deviations" and "apparent violations." The FAA's current interpretation and application of this regulation would essentially grant a private employer absolute authority to determine whether an employee has committed a regulatory violation, and all within two days. 14 C.F.R. § 120.111(d).

Indeed, if the regulations compelled the FAA to unquestioningly accept an employer's refusal report made under 14 C.F.R. § 120.111(d), then the FAA would not have conducted an investigation "to determine whether [Mr. Paul] refused to submit to a DOT/FAA random drug test as reported to us" by AmeriJet. A-20, A-22. The FAA would have simply rubber stamped AmeriJet's report as a de facto

regulation violation upon receipt in April 2024, instead of doing so months later in August 2024 in its Rule Violation Finding. A-20, A-66.

The FAA's recital of Section 40.355(i) to justify its decision to treat Mr. Paul's actions as a rule violation under the DOT/FAA testing regulations is a post hoc attempt to justify its Rule Violation Finding against Mr. Paul but without affording him the legal process protections such adverse agency action requires. It is a nonsensical interpretation entitled to no legal weight and contradicted by the FAA's written guidance and actions in this very case.

## II.  THE FAA'S RULE VIOLATION FINDING VIOLATES MR. PAUL'S PROCEDURAL DUE PROCESS RIGHTS UNDER THE FIFTH AMENDMENT

The Rule Violation Finding has had a devastating impact on Mr. Paul's livelihood and will permanently harm his aviation career. The FAA rendered its Rule Violation Finding without affording Mr. Paul the process due when an individual is faced with the deprivation of their right to pursue their vocation. And, Mr. Paul has no channel to be heard or to seek relief from the severe regulatory consequences of the Rule Violation Finding. Simply put, Mr. Paul has nowhere to go.

The "due process" clause of the Fifth Amendment of the United States Constitution prohibits the federal government from depriving any person "of life, liberty, or property without due process of law." "A procedural due process violation occurs when an official deprives an individual of a liberty or property interest

without providing appropriate procedural protections." *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 689 (D.C. Cir. 2009). The "right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the 'liberty' and 'property' concepts of the Fifth Amendment." *Greene v. McElroy*, 360 U.S. 474, 492 (1959).

A "stigma plus" due process claim arises when the government deprives an individual of their right to freely pursue their chosen profession without providing "sufficient procedural protections" and, in so doing, creates "'a stigma or other disability that foreclosed [the plaintiff's] freedom to take advantage of other employment opportunities[.]'" *Campbell v. D.C.*, 894 F.3d 281, 284, 288 (2018) (quoting *O'Donnell v. Barry*, 148 F.3d 1126, 1140 (D.C. Cir. 1998)) (internal citation omitted).

Mr. Paul's liberty interest in pursuing his chosen profession "free from unreasonable government interference" is directly and strongly implicated here. As a result of the FAA's Rule Violation Finding, he will be unable to hold a first-class medical certificate for two years from the date of his reported drug test refusal. 14 C.F.R. § 67.107(b)(2). Without a medical certificate, Mr. Paul is ineligible for employment as "airline transport pilot." 14 C.F.R. § 61.23. Moreover, a "DOT/FAA drug test refusal" deems him to have a "substance abuse" problem within the meaning of the aviation medical standards and requires him to bear that stigma and

suffer the consequences of such a designation, including reporting that "substance abuse" on his FAA Medical Application. *See* 14 C.F.R. § 67.107(b)(2); FAA, 2025 *Guide for Aviation Medical Examiners* at 37, 41, 44, https://www.faa.gov/ ame_guide/media/ame_guide.pdf (Jan. 1, 2025) (discussing Question 18(n) on the FAA Form 8500-8 application for airman medical certificate, which requires applicants to check "yes" or "no" to "substance abuse … in the last 2 years").

Even after Mr. Paul ultimately regains his medical certificate, he will bear the lifetime stigma of being branded a rule violator, having been deemed to have refused a DOT/FAA drug test, because Part 121 air carriers such as AmeriJet are required to report DOT/FAA-required drug test refusals to the PRD. 14 C.F.R. §111.220(a)(1)(ii); *see also* 49 U.S.C. §§ 44703(i)(2)(A)(i), (i)(2)(A)(iii). Mr. Paul's future employment as a pilot will be adversely affected since Part 121 air carriers and other covered entities must review "all relevant information" about a prospective pilot hire in the PRD, including all records "submitted by a reporting entity." 14 C.F.R. § 111.105. *See generally* 49 U.S.C. §§ 44703(h)(1)(A), (h)(1)(B)(ii)(III), (i)(1); *see also* 49 C.F.R. § 40.25 (requiring prospective employers to obtain drug testing records from previous employers, including refusals to be tested). Mr. Paul thus faces devastating short- and long-term impacts on his aviation career, effected through the FAA's Rule Violation Finding (or under its Section 40.355(i) assertion— through the report of AmeriJet for which there is no designated appeal process)

35

without the basic due process protections of notice and an opportunity to be heard. *See English v. D.C.*, 717 F.3d 968, 972 (D.C. Cir. 2018).

Had the FAA proposed to suspend or revoke Mr. Paul's airman certificate, he would have been afforded basic due process protections because the FAA would be required to "provide the [certificate] holder an opportunity to answer the charges and be heard why the certificate should not be amended." 49 U.S.C. § 44709(c); *see also* 14 C.F.R. pt. 821 ("NTSB appeal procedures"). Under the NTSB appeal procedures, other pilots have challenged reported DOT/FAA drug test refusals, successfully overturned them, and regained their careers. *See*, *e.g.*, *Rojas*, Order EA-5496, 2009 WL 5213712 (NTSB 2009).

However, the FAA provides no process whatsoever by which an individual can challenge an employer's determination that they refused a drug test. The LOI does not constitute "notice" because it merely advised Mr. Paul that the FAA was conducting an "investigation to determine whether [he] refused to submit to a DOT/FAA random drug test … and if so, what, if any enforcement action should be taken." A-22. In the LOI, the FAA expressly notes that Mr. Paul's "oral or written response" was "not required" and, if provided, could "be used as evidence against [him]." *Id.* Most significantly, although the FAA gathered information in it, it failed to even consider the record evidence which demonstrates that Mr. Paul did not "refuse" to submit to a legitimate DOT/FAA random drug test. *See supra* pp. 22-28.

36

The FAA disclaims responsibility for the consequences of its Rule Violation Finding by asserting that it "did not make a refusal determination regarding Mr. Paul's drug test." A-76. Rather, according to the FAA, AmeriJet made this determination and, "in accordance with 49 C.F.R. § 40.355(i), refusal determinations are made by the employer." A-76. As noted above, this assertion not only flies in the face of the FAA's representations as to the nature and status of its investigation in the LOI, but it is also wholly insupportable as a matter of regulatory interpretation. An employer's duty to make the determination as to whether an employee refused a random drug test is wholly distinct from the *reviewability* of that determination by the FAA. Section 40.355(i) neither states nor implies that the FAA is prohibited from reviewing or reversing an employer's determination.[10]

If the FAA's misreading of Section 40.355(i) is permitted to stand, then every employer will have the first and the last word as to whether an employee refused a DOT/FAA-required drug test, within the meaning of the regulations. That would enable an employer to base these critical determinations on internal company policies, animus, or whim, rather than effectuate the intent of the DOT/FAA drug testing regulatory scheme. In this scenario, every FAA "investigation" of an alleged

---

[10] In addition, implicit in the FAA's reading is the notion that, but for this regulatory prohibition, an employer somehow could be in a position to "delegate" its duty to a service agent or outside contractor. This is nonsensical.

random drug test refusal becomes no more than a rubber stamp of the employer's determination, with the FAA deciding only whether or not to take action against the pilot's airman certificate. This is especially egregious given that the FAA prohibits employees, such as Mr. Paul, from seeking recourse against the regulatory consequences of an employer's "refusal" determination via arbitration. 49 C.F.R. § 40.191(c) ("The consequences specified under DOT agency regulations for a refusal cannot be overturned or set aside by an arbitration, grievance, State court or other non-Federal forum that adjudicates the personnel decisions the employer has taken against the employee.").

## CONCLUSION

For the reasons stated above, Petitioner respectfully requests that this Court grant this Petition. In granting this Petition, Mr. Paul requests that the Court: (1) vacate the FAA Rule Violation Determination, solely the finding that Mr. Paul refused to submit to a DOT/FAA random drug test; (2) affirm the FAA's determination not to seek enforcement action; (3) order the FAA to remove all records reflecting a "refusal" of the DOT/FAA random drug test, including correcting any FAA reports to the PRD that Mr. Paul refused a DOT/FAA drug test; and (4) order the FAA to advise AmeriJet that Mr. Paul did not refuse to submit to a DOT/FAA-required drug test within the meaning of the DOT/FAA testing regulations and direct AmeriJet to correct any reports it has made to the PRD

reflecting that Mr. Paul refused a DOT/FAA drug test. *See* 49 U.S.C. § 46110(c)

(granting the Court authority to "affirm, amend, modify, or set aside any part" of the

FAA's order).

March 12, 2025                          Respectfully submitted,

                                        */s/ Stephanie G. Spanja*
                                        Stephanie G. Spanja, Bar No. 62342
                                        *Stephanie.Spanja@alpa.org*
                                        M. Antonia Bird, Bar No. 65666
                                        *Antonia.Bird@alpa.org*
                                        AIR LINE PILOTS ASSOCIATION,
                                           INTERNATIONAL
                                        7950 Jones Branch Drive, Suite 400S
                                        McLean, Virginia 22102
                                        (703) 481-2475
                                        (703) 481-2478 (fax)

                                        *Attorneys for Petitioner, Ryan J. Paul*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) this document contains 9,222 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft 365 Word Version 2502 in 14 point Times New Roman font.

Dated: March 12, 2025                    */s/ Stephanie G. Spanja*
                                         Stephanie G. Spanja
                                         Attorney for Petitioner Ryan Paul

## ADDENDUM OF PERTINENT STATUTES AND REGULATIONS

U.S. Const. amend. V. Grand Jury Indictment for Capital Crimes; Double Jeopardy; Self-Incrimination; Due Process of Law; Takings without Just Compensation ......................................................Add. 1

5 U.S.C. § 706. Scope of review ...................................................Add. 2

49 U.S.C. § 106. Federal Aviation Administration ........................Add. 2

49 U.S.C. § 44703. Airmen certificates ..........................................Add. 2

49 U.S.C. § 45102. Alcohol and controlled substances testing programs ...............................................................................Add. 4

49 U.S.C. § 46110. Judicial review ................................................Add. 5

14 C.F.R. § 67.101 Eligibility ........................................................Add. 6

14 C.F.R. § 67.107 Mental ............................................................Add. 6

14 C.F.R. § 67.207 Mental ............................................................Add. 8

14 C.F.R. § 67.307 Mental ............................................................Add. 10

14 C.F.R. § 111.105 Evaluation of pilot records ...........................Add. 11

14 C.F.R. § 111.220 Drug and alcohol testing records ..................Add. 12

14 C.F.R. § 120.3 Purpose ............................................................Add. 12

14 C.F.R. § 120.7 Definitions .......................................................Add. 13

14 C.F.R. § 120.11 Refusal to submit to a drug or alcohol test by a Part 61 certificate holder ..........................................................Add. 13

14 C.F.R. § 120.103 General .........................................................Add. 13

14 C.F.R. § 120.105 Employees who must be tested .....................Add. 14

14 C.F.R. § 120.111 Administrative and other matters ..................Add. 15

49 C.F.R. § 40.191 What is a refusal to take a DOT drug test, and what are the consequences? ..........................................................................Add. 17

49 C.F.R. § 40.285 When is a SAP evaluation required? ..............................Add. 18

49 C.F.R. § 40.355 What limitations apply to the activities of service agents? ..................................................................................................Add. 19

**U.S. Const. amend. V. Grand Jury Indictment for Capital Crimes; Double Jeopardy; Self-Incrimination; Due Process of Law; Takings without Just Compensation**

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

**5 U.S.C. § 706. Scope of review**

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

\* \* \*

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

\* \* \*

**49 U.S.C. § 106. Federal Aviation Administration.**

**(a) In general.—**The Federal Aviation Administration is an administration in the Department of Transportation.

\* \* \*

**49 U.S.C. § 44703. Airmen certificates**

\* \* \*

**(h) Records of employment of pilot applicants.—**

**(1) In general.—**Subject to paragraph (14), before allowing an individual to begin service as a pilot, an air carrier shall request and receive the following information:

**(A) FAA records.—**From the Administrator of the Federal Aviation Administration, records pertaining to the individual that are maintained by the Administrator concerning--

**(i)** current airman certificates (including airman medical certificates) and associated type ratings, including any limitations to those certificates and ratings; and

**Add. 2**

(ii) summaries of legal enforcement actions resulting in a finding by the Administrator of a violation of this title or a regulation prescribed or order issued under this title that was not subsequently overturned.

**(B) Air carrier and other records.**—From any air carrier or other person (except a branch of the United States Armed Forces, the National Guard, or a reserve component of the United States Armed Forces) that has employed the individual as a pilot of a civil or public aircraft at any time during the 5-year period preceding the date of the employment application of the individual, or from the trustee in bankruptcy for such air carrier or person—

\* \* \*

(ii) other records pertaining to the individual's performance as a pilot that are maintained by the air carrier or person concerning—

(I) the training, qualifications, proficiency, or professional competence of the individual, including comments and evaluations made by a check airman designated in accordance with section 121.411, 125.295, or 135.337 of such title;

\* \* \*

**(i) FAA pilot records database.—**

**(1) In general.**—Before allowing an individual to begin service as a pilot, an air carrier shall access and evaluate, in accordance with the requirements of this subsection, information pertaining to the individual from the pilot records database established under paragraph (2).

**(2) Pilot records database.**—Not later than April 30, 2017, the Administrator shall establish and make available for use an electronic database (in this subsection referred to as the "database") containing the following records:

**(A) FAA records.**—From the Administrator—

(i) records that are maintained by the Administrator concerning current airman certificates, including airman medical certificates

**Add. 3**

and associated type ratings and information on any limitations to those certificates and ratings;

* * *

**(iii)** summaries of legal enforcement actions resulting in a finding by the Administrator of a violation of this title or a regulation prescribed or order issued under this title that was not subsequently overturned.

* * *

## 49 U.S.C. § 44709. Amendments, modifications, suspensions, and revocations of certificates

**(b) Actions of the Administrator.—**The Administrator may issue an order amending, modifying, suspending, or revoking—

(1) any part of a certificate issued under this chapter if—

(A) the Administrator decides after conducting a reinspection, reexamination, or other investigation that safety in air commerce or air transportation and the public interest require that action; or

* * *

## 49 U.S.C. § 45102. Alcohol and controlled substances testing programs

**(a) Program for employees of air carriers and foreign air carriers.—(1)** In the interest of aviation safety, the Administrator of the Federal Aviation Administration shall prescribe regulations that establish a program requiring air carriers and foreign air carriers to conduct preemployment, reasonable suspicion, random, and post-accident testing of airmen, crew members, airport security screening personnel, and other air carrier employees responsible for safety-sensitive functions (as decided by the Administrator) for the use of a controlled substance in violation of law or a United States Government regulation; and to conduct reasonable suspicion, random, and post-accident testing of airmen, crew members, airport security screening personnel, and other air carrier employees responsible for safety-sensitive functions (as decided by the Administrator) for the use of alcohol in violation of law or a United States Government regulation. The regulations shall permit air carriers and foreign air carriers to conduct preemployment testing of airmen, crew members,

airport security screening personnel, and other air carrier employees responsible for safety-sensitive functions (as decided by the Administrator) for the use of alcohol.

* * *

## 49 U.S.C. § 46110. Judicial review

**(a)    Filing and venue.**—Except for an order related to a foreign air carrier subject to disapproval by the President under section 41307 or 41509(f) of this title, a person disclosing a substantial interest in an order issued by the Secretary of Transportation (or the Administrator of the Transportation Security Administration with respect to security duties and powers designated to be carried out by the Administrator of the Transportation Security Administration or the Administrator of the Federal Aviation Administration with respect to aviation duties and powers designated to be carried out by the Administrator of the Federal Aviation Administration) in whole or in part under this part, part B, or subsection (l) or (r) of section 114 may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business. The petition must be filed not later than 60 days after the order is issued. The court may allow the petition to be filed after the 60th day only if there are reasonable grounds for not filing by the 60th day.

* * *

**(c) Authority of court.**—When the petition is sent to the Secretary, Administrator of the Transportation Security Administration, or Administrator of the Federal Aviation Administration, the court has exclusive jurisdiction to affirm, amend, modify, or set aside any part of the order and may order the Secretary, Administrator of the Transportation Security Administration, or Administrator of the Federal Aviation Administration to conduct further proceedings. After reasonable notice to the Secretary, Administrator of the Transportation Security Administration, or Administrator of the Federal Aviation Administration, the court may grant interim relief by staying the order or taking other appropriate action when good cause for its action exists. Findings of fact by the Secretary, Administrator of the Transportation Security Administration, or Administrator of the Federal Aviation Administration, if supported by substantial evidence, are conclusive.

* * *

**Add. 5**

**14 C.F.R. § 67.101 Eligibility.**

To be eligible for a first-class airman medical certificate, and to remain eligible for a first-class airman medical certificate, a person must meet the requirements of this subpart.

**14 C.F.R. § 67.107 Mental.**

Mental standards for a first-class airman medical certificate are:

(a) No established medical history or clinical diagnosis of any of the following:

(1) A personality disorder that is severe enough to have repeatedly manifested itself by overt acts.

(2) A psychosis. As used in this section, "psychosis" refers to a mental disorder in which:

(i) The individual has manifested delusions, hallucinations, grossly bizarre or disorganized behavior, or other commonly accepted symptoms of this condition; or

(ii) The individual may reasonably be expected to manifest delusions, hallucinations, grossly bizarre or disorganized behavior, or other commonly accepted symptoms of this condition.

(3) A bipolar disorder.

(4) Substance dependence, except where there is established clinical evidence, satisfactory to the Federal Air Surgeon, of recovery, including sustained total abstinence from the substance(s) for not less than the preceding 2 years. As used in this section—

(i) "Substance" includes: Alcohol; other sedatives and hypnotics; anxiolytics; opioids; central nervous system stimulants such as cocaine, amphetamines, and similarly acting sympathomimetics; hallucinogens; phencyclidine or similarly acting arylcyclohexylamines; cannabis; inhalants; and other psychoactive drugs and chemicals; and

(ii) "Substance dependence" means a condition in which a person is dependent on a substance, other than tobacco or ordinary xanthine-

containing (e.g., caffeine) beverages, as evidenced by—

(A) Increased tolerance;

(B) Manifestation of withdrawal symptoms;

(C) Impaired control of use; or

(D) Continued use despite damage to physical health or impairment of social, personal, or occupational functioning.

(b) No substance abuse within the preceding 2 years defined as:

(1) Use of a substance in a situation in which that use was physically hazardous, if there has been at any other time an instance of the use of a substance also in a situation in which that use was physically hazardous;

(2) A verified positive drug test result, an alcohol test result of 0.04 or greater alcohol concentration, or a refusal to submit to a drug or alcohol test required by the U.S. Department of Transportation or an agency of the U.S. Department of Transportation; or

(3) Misuse of a substance that the Federal Air Surgeon, based on case history and appropriate, qualified medical judgment relating to the substance involved, finds—

(i) Makes the person unable to safely perform the duties or exercise the privileges of the airman certificate applied for or held; or

(ii) May reasonably be expected, for the maximum duration of the airman medical certificate applied for or held, to make the person unable to perform those duties or exercise those privileges.

(c) No other personality disorder, neurosis, or other mental condition that the Federal Air Surgeon, based on the case history and appropriate, qualified medical judgment relating to the condition involved, finds—

(1) Makes the person unable to safely perform the duties or exercise the privileges of the airman certificate applied for or held; or

(2) May reasonably be expected, for the maximum duration of the airman

**Add. 7**

medical certificate applied for or held, to make the person unable to perform those duties or exercise those privileges.

**14 C.F.R. § 67.207 Mental.**

Mental standards for a second-class airman medical certificate are:

(a) No established medical history or clinical diagnosis of any of the following:

> (1) A personality disorder that is severe enough to have repeatedly manifested itself by overt acts.

> (2) A psychosis. As used in this section, "psychosis" refers to a mental disorder in which:

>> (i) The individual has manifested delusions, hallucinations, grossly bizarre or disorganized behavior, or other commonly accepted symptoms of this condition; or

>> (ii) The individual may reasonably be expected to manifest delusions, hallucinations, grossly bizarre or disorganized behavior, or other commonly accepted symptoms of this condition.

> (3) A bipolar disorder.

> (4) Substance dependence, except where there is established clinical evidence, satisfactory to the Federal Air Surgeon, of recovery, including sustained total abstinence from the substance(s) for not less than the preceding 2 years. As used in this section—

>> (i) "Substance" includes: Alcohol; other sedatives and hypnotics; anxiolytics; opioids; central nervous system stimulants such as cocaine, amphetamines, and similarly acting sympathomimetics; hallucinogens; phencyclidine or similarly acting arylcyclohexylamines; cannabis; inhalants; and other psychoactive drugs and chemicals; and

>> (ii) "Substance dependence" means a condition in which a person is dependent on a substance, other than tobacco or ordinary xanthine-containing (e.g., caffeine) beverages, as evidenced by—

>>> (A) Increased tolerance;

**Add. 8**

(B) Manifestation of withdrawal symptoms;

(C) Impaired control of use; or

(D) Continued use despite damage to physical health or impairment of social, personal, or occupational functioning.

(b) No substance abuse within the preceding 2 years defined as:

(1) Use of a substance in a situation in which that use was physically hazardous, if there has been at any other time an instance of the use of a substance also in a situation in which that use was physically hazardous;

(2) A verified positive drug test result, an alcohol test result of 0.04 or greater alcohol concentration, or a refusal to submit to a drug or alcohol test required by the U.S. Department of Transportation or an agency of the U.S. Department of Transportation; or

(3) Misuse of a substance that the Federal Air Surgeon, based on case history and appropriate, qualified medical judgment relating to the substance involved, finds—

(i) Makes the person unable to safely perform the duties or exercise the privileges of the airman certificate applied for or held; or

(ii) May reasonably be expected, for the maximum duration of the airman medical certificate applied for or held, to make the person unable to perform those duties or exercise those privileges.

(c) No other personality disorder, neurosis, or other mental condition that the Federal Air Surgeon, based on the case history and appropriate, qualified medical judgment relating to the condition involved, finds—

(1) Makes the person unable to safely perform the duties or exercise the privileges of the airman certificate applied for or held; or

(2) May reasonably be expected, for the maximum duration of the airman medical certificate applied for or held, to make the person unable to perform those duties or exercise those privileges.

**Add. 9**

**14 C.F.R. § 67.307 Mental.**

Mental standards for a third-class airman medical certificate are:

(a) No established medical history or clinical diagnosis of any of the following:

(1) A personality disorder that is severe enough to have repeatedly manifested itself by overt acts.

(2) A psychosis. As used in this section, "psychosis" refers to a mental disorder in which—

(i) The individual has manifested delusions, hallucinations, grossly bizarre or disorganized behavior, or other commonly accepted symptoms of this condition; or

(ii) The individual may reasonably be expected to manifest delusions, hallucinations, grossly bizarre or disorganized behavior, or other commonly accepted symptoms of this condition.

(3) A bipolar disorder.

(4) Substance dependence, except where there is established clinical evidence, satisfactory to the Federal Air Surgeon, of recovery, including sustained total abstinence from the substance(s) for not less than the preceding 2 years. As used in this section—

(i) "Substance" includes: alcohol; other sedatives and hypnotics; anxiolytics; opioids; central nervous system stimulants such as cocaine, amphetamines, and similarly acting sympathomimetics; hallucinogens; phencyclidine or similarly acting arylcyclohexylamines; cannabis; inhalants; and other psychoactive drugs and chemicals; and

(ii) "Substance dependence" means a condition in which a person is dependent on a substance, other than tobacco or ordinary xanthine-containing (e.g., caffeine) beverages, as evidenced by—

(A) Increased tolerance;

(B) Manifestation of withdrawal symptoms;

(C) Impaired control of use; or

(D) Continued use despite damage to physical health or impairment of social, personal, or occupational functioning.

(b) No substance abuse within the preceding 2 years defined as:

(1) Use of a substance in a situation in which that use was physically hazardous, if there has been at any other time an instance of the use of a substance also in a situation in which that use was physically hazardous;

(2) A verified positive drug test result, an alcohol test result of 0.04 or greater alcohol concentration, or a refusal to submit to a drug or alcohol test required by the U.S. Department of Transportation or an agency of the U.S. Department of Transportation; or

(3) Misuse of a substance that the Federal Air Surgeon, based on case history and appropriate, qualified medical judgment relating to the substance involved, finds—

(i) Makes the person unable to safely perform the duties or exercise the privileges of the airman certificate applied for or held; or

(ii) May reasonably be expected, for the maximum duration of the airman medical certificate applied for or held, to make the person unable to perform those duties or exercise those privileges.

(c) No other personality disorder, neurosis, or other mental condition that the Federal Air Surgeon, based on the case history and appropriate, qualified medical judgment relating to the condition involved, finds—

(1) Makes the person unable to safely perform the duties or exercise the privileges of the airman certificate applied for or held; or

(2) May reasonably be expected, for the maximum duration of the airman medical certificate applied for or held, to make the person unable to perform those duties or exercise those privileges.

## 14 C.F.R. § 111.105 Evaluation of pilot records.

(a) Except as provided in § 111.115, no reviewing entity may permit an individual

to begin service as a pilot until the reviewing entity has evaluated all relevant information in the PRD.

(b) Evaluation must include review of all of the following information pertaining to that pilot:

(1) All FAA records in the PRD as described in § 111.135.

(2) All records in the PRD submitted by a reporting entity.

(3) All motor vehicle driving records obtained in accordance with § 111.110.

(4) The employment history the pilot provides to the PRD in accordance with subpart D of this part. If, upon review of the employment history provided by the pilot and the records described in (b)(2) of this section, a reviewing entity determines that records might be available that the pilot's previous employer has not yet uploaded in the database, the reviewing entity must submit a request to the pilot's previous employer(s) through the PRD to report any applicable records in accordance with the process in § 111.215(b).

**14 C.F.R. § 111.220 Drug and alcohol testing records.**

(a) Each operator or trustee required to comply with part 120 of this chapter and subject to the applicability of this subpart must report to the PRD the following records for each individual whom the reporting entity has employed as a pilot:

(1) Records concerning drug testing, including—

\* \* \*

(ii) Any refusal to submit to drug testing or records indicating substituted or adulterated drug test results, which the employer must retain in accordance with 49 CFR 40.333(a)(1)(iii);

\* \* \*

**14 C.F.R. § 120.3 Purpose.**

The purpose of this part is to establish a program designed to help prevent accidents and injuries resulting from the use of prohibited drugs or the misuse of alcohol by employees who perform safety-sensitive functions in aviation.

**14 C.F.R. § 120.7 Definitions.**

For the purposes of this part, the following definitions apply:

\* \* \*

(m) Refusal to submit to drug test means that a covered employee engages in conduct including but not limited to that described in 49 CFR 40.191.

\* \* \*

**14 C.F.R. § 120.11 Refusal to submit to a drug or alcohol test by a Part 61 certificate holder.**

\* \* \*

(b) Refusal by the holder of a certificate issued under part 61 of this chapter to take a drug or alcohol test required under the provisions of this part is grounds for:

\* \* \*

(2) Suspension or revocation of any certificate, rating, or authorization issued under part 61 of this chapter.

**14 C.F.R. § 120.103 General.**

(a) Purpose. The purpose of this subpart is to establish a program designed to help prevent accidents and injuries resulting from the use of prohibited drugs by employees who perform safety-sensitive functions.

(b) DOT procedures.

(1) Each employer shall ensure that drug testing programs conducted pursuant to 14 CFR parts 65, 91, 121, and 135 comply with the requirements of this subpart and the "Procedures for Transportation Workplace Drug Testing Programs" published by the Department of Transportation (DOT) (49 CFR part 40).

(2) An employer may not use or contract with any drug testing laboratory that is not certified by the Department of Health and Human Services (HHS) under the National Laboratory Certification Program.

(c) Employer responsibility. As an employer, you are responsible for all actions of your officials, representatives, and service agents in carrying out the requirements of this subpart and 49 CFR part 40.

(d) Applicable Federal Regulations. The following applicable regulations appear in 49 CFR or 14 CFR:

(1) 49 CFR Part 40—Procedures for Transportation Workplace Drug Testing Programs

(2) 14 CFR:

(i) § 67.107—First–Class Airman Medical Certificate, Mental.

(ii) § 67.207—Second–Class Airman Medical Certificate, Mental.

(iii) § 67.307—Third–Class Airman Medical Certificate, Mental.

(iv) § 91.147—Passenger carrying flight for compensation or hire.

(v) § 135.1—Applicability

(e) Falsification. No individual may make, or cause to be made, any of the following:

(1) Any fraudulent or intentionally false statement in any application of a drug testing program.

(2) Any fraudulent or intentionally false entry in any record or report that is made, kept, or used to show compliance with this part.

(3) Any reproduction or alteration, for fraudulent purposes, of any report or record required to be kept by this part.

**14 C.F.R. § 120.105 Employees who must be tested.**

Each employee, including any assistant, helper, or individual in a training status, who performs a safety-sensitive function listed in this section directly or by contract (including by subcontract at any tier) for an employer as defined in this subpart must be subject to drug testing under a drug testing program implemented in accordance with this subpart. This includes full-time, part-time, temporary, and intermittent employees regardless of the degree of supervision. The safety-sensitive functions are:

(a) Flight crewmember duties.

(b) Flight attendant duties.

(c) Flight instruction duties.

(d) Aircraft dispatcher duties.

(e) Aircraft maintenance and preventive maintenance duties.

(f) Ground security coordinator duties.

(g) Aviation screening duties.

(h) Air traffic control duties.

(i) Operations control specialist duties.

**14 C.F.R. § 120.111 Administrative and other matters.**

(a) MRO record retention requirements.

> (1) Records concerning drug tests confirmed positive by the laboratory shall be maintained by the MRO for 5 years. Such records include the MRO copies of the custody and control form, medical interviews, documentation of the basis for verifying as negative test results confirmed as positive by the laboratory, any other documentation concerning the MRO's verification process.

> (2) Should the employer change MRO's for any reason, the employer shall ensure that the former MRO forwards all records maintained pursuant to this rule to the new MRO within ten working days of receiving notice from the employer of the new MRO's name and address.

> (3) Any employer obtaining MRO services by contract, including a contract through a C/TPA, shall ensure that the contract includes a recordkeeping provision that is consistent with this paragraph, including requirements for transferring records to a new MRO.

(b) Access to records. The employer and the MRO shall permit the Administrator or the Administrator's representative to examine records required to be kept under this subpart and 49 CFR part 40. The Administrator or the Administrator's representative

may require that all records maintained by the service agent for the employer must be produced at the employer's place of business.

(c) Release of drug testing information. An employer shall release information regarding an employee's drug testing results, evaluation, or rehabilitation to a third party in accordance with 49 CFR part 40. Except as required by law, this subpart, or 49 CFR part 40, no employer shall release employee information.

(d) Refusal to submit to testing. Each employer must notify the FAA within 2 working days of any covered employee who holds a certificate issued under part 61, part 63, or part 65 of this chapter who has refused to submit to a drug test required under this subpart. Notification must be sent to: Federal Aviation Administration, Office of Aerospace Medicine, Drug Abatement Division (AAM–800), 800 Independence Avenue, SW., Washington, DC 20591, or by fax to (202) 267–5200.

(e) Permanent disqualification from service.

    (1) An employee who has verified positive drug test results on two drug tests required by this subpart of this chapter, and conducted after September 19, 1994, is permanently precluded from performing for an employer the safety-sensitive duties the employee performed prior to the second drug test.

    (2) An employee who has engaged in prohibited drug use during the performance of a safety-sensitive function after September 19, 1994 is permanently precluded from performing that safety-sensitive function for an employer.

(f) DOT management information system annual reports. Copies of any annual reports submitted to the FAA under this subpart must be maintained by the employer for a minimum of 5 years.

**49 C.F.R. § 40.191 What is a refusal to take a DOT drug test, and what are the consequences?**

(a) As an employee, you have refused to take a drug test if you:

(1) Fail to appear for any test (except a pre-employment test) within a reasonable time, as determined by the employer, consistent with applicable DOT agency regulations, after being directed to do so by the employer. This includes the failure of an employee (including an owner-operator) to appear for a test when called by a C/TPA (see § 40.61(a));

(2) Fail to remain at the testing site until the testing process is complete. Provided that an employee who leaves the collection site before the testing process commences (see § 40.63(c) or § 40.72(d)(3), as applicable) for a pre-employment test is not deemed to have refused to test. The collector is not required to inform an employee that the failure to remain at the collection site is a refusal. If an employee leaves prior to the completion of the testing process, per § 40.355(i) the employer must decide whether the employee's actions constitute a refusal;

(3) Fail to provide a specimen for any drug test required by this part or DOT agency regulations. Provided that an employee who does not provide a specimen because he or she has left the testing site before the testing process commences (see § 40.63(c) or § 40.72(d)(3), as applicable) for a pre-employment test is not deemed to have refused to test. The collector is not required to inform an employee that the failure to remain at the collection site is a refusal. If an employee leaves prior to the completion of the testing process, per § 40.355(i) the employer must decide whether the employee's actions constitute a refusal;

(4) In the case of a directly observed or monitored urine collection in a drug test, fail to permit the observation or monitoring of an employee's provision of a specimen (see §§ 40.67(m) and 40.69(g));

(5) Fail to provide a sufficient amount of specimen when directed, and it has been determined, through a required medical evaluation, that there was no adequate medical explanation for the failure (see § 40.193(d)(2));

(6) Fail or decline to take an additional drug test the employer or collector has directed you to take (see, for instance, § 40.197(b) as applicable);

**Add. 17**

(7) Fail to undergo a medical examination or evaluation, as directed by the MRO as part of the verification process, or as directed by the DER under § 40.193(c). In the case of a pre-employment drug test, the employee is deemed to have refused to test on this basis only if the pre-employment test is conducted following a contingent offer of employment. If there was no contingent offer of employment, the MRO will cancel the test;

(8) Fail to cooperate with any part of the testing process (e.g., refuse to empty pockets when directed by the collector, behave in a confrontational way that disrupts the collection process, fail to wash hands after being directed to do so by the collector, fail to remove objects from mouth, fail to permit inspection of the oral cavity, or fail to complete a rinse when requested);

(9) For an observed urine collection, fail to follow the observer's instructions to raise your clothing above the waist, lower clothing and underpants, and to turn around to permit the observer to determine if you have any type of prosthetic or other device that could be used to interfere with the collection process;

* * *

(c) As an employee, if you refuse to take a drug test, you incur the consequences specified under DOT agency regulations for a violation of those DOT agency regulations. The consequences specified under DOT agency regulations for a refusal cannot be overturned or set aside by an arbitration, grievance, State court or other non–Federal forum that adjudicates the personnel decisions the employer has taken against the employee.

* * *

### 49 C.F.R. § 40.285 When is a SAP evaluation required?

(a) As an employee, when you have violated DOT drug and alcohol regulations, you cannot again perform any DOT safety-sensitive duties for any employer until and unless you complete the SAP evaluation, referral, and education/treatment process set forth in this subpart and in applicable DOT agency regulations. The first step in this process is a SAP evaluation.

(b) For purposes of this subpart, a verified positive DOT drug test result, a DOT alcohol test with a result indicating an alcohol concentration of 0.04 or greater, a

refusal to test (including by adulterating or substituting a specimen) or any other violation of the prohibition on the use of alcohol or drugs under a DOT agency regulation constitutes a DOT drug and alcohol regulation violation.

**49 C.F.R. § 40.355 What limitations apply to the activities of service agents?**

As a service agent, you are subject to the following limitations concerning your activities in the DOT drug and alcohol testing program.

\* \* \*

(i) Except as provided in paragraph (j) of this section, you must not make a determination that an employee has refused a drug or alcohol test. This is a non-delegable duty of the actual employer. You may, however, provide advice and information to employers regarding refusal-to-test issues.

\* \* \*